# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0391V
UNPUBLISHED

| | |
|---|---|
| SUE DECORETZ,<br><br>        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>        Respondent. | Chief Special Master Corcoran<br><br>Filed: May 7, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Adriana Ruth Teitel*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On March 14, 2019, Sue Decoretz filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered left shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 17, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$75,161.35**, **representing compensation in the amount of**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$75,000.00 for actual pain and suffering and $161.35 for agreed-upon past unreimbursable expenses.**

I.     **Relevant Procedural History**

On May 18, 2020, Respondent filed his Rule 4(c) Report conceding that Petitioner was entitled to compensation (ECF No. 19). A ruling on entitlement was issued on May 19, 2020 (ECF No. 20), and the parties commenced damages discussions. On June 25, 2020, Petitioner filed a status report stating that the parties had reached an impasse on compensation for pain and suffering, and wished to file damages briefs (ECF No. 22).

To that end, on October 3, 2020, Petitioner filed Exhibit 10 a supplemental affidavit (ECF No. 25). Then, Petitioner filed her damages brief on October 4, 2020 ("Br.") (ECF No. 26). Respondent filed his damages brief on December 28, 2020 ("Opp.") (ECF No. 28). On January 29, 2020, Petitioner filed Exhibit 11 containing medical records (ECF No. 30). And on February 5, 2021, Petitioner filed a joint status report confirming that the only dispute concerned pain and suffering damages and that the parties were available for a hearing on March 26, 2021 (ECF No. 31).

On March 26, 2021, a hearing was held to resolve damages. This written decision memorializes my decision, which I orally issued at the conclusion of the Motions Day hearing.

II.    **Relevant Factual History**

This decision contains only a brief summary of facts pertinent to pain and suffering damages. A more detailed recitation of the facts may be found in the petition, Respondent's Rule 4(c) Report, and the parties' damages briefs.

On October 17, 2017, Petitioner received a flu vaccine in her left deltoid. Ex. 1 at 2. At the time, she was a 71 year old retired accountant. Ex. 2 at 62; 4 at 11. Approximately six weeks later, on November 29, 2017, Petitioner presented to her primary care physician reporting left shoulder pain for the past six weeks. Ex. 2 at 61. She reported that her shoulder pain began immediately after vaccination, and, rather than improving, it had worsened. *Id.* at 63. On examination, she was found to have decreased range of motion, limited by pain. *Id.* She was assessed with suspected SIRVA and an adverse vaccine reaction and referred to physical therapy ("PT"). *Id.* at 64.

On December 4, 2017, Petitioner underwent a left shoulder MRI. Ex. 2 at 100. The MRI revealed changes consistent with adhesive capsulitis and mild tendinosis, but no rotator cuff tear. *Id.* On December 11, 2017, an orthopedist examined Petitioner, who

2

reported a pain level of 10/10, and diagnosed her with adhesive capsulitis. Ex. 2 at 69-70. He determined that injection therapy was "not indicated" and recommended PT. *Id.*

On December 7, 2017, Petitioner reported for an initial PT evaluation. Ex. 4 at 74. She stated that her current pain level was 4/10, and ranged from 2-10 on a scale of 0-10. *Id.* She underwent a total of 17 PT sessions between December 7, 2017 and July 25, 2018. *Id.* at 28-76. On April 11, 2018, her pain level during PT was 3/10, with a range of 0-10. *Id.* at 52. At her June 6, 2018 session, she reported that she was in less pain each visit but still lacked full range of motion. *Id.* at 37. However, on examination her left shoulder range of motion was found to be within normal limits. *Id.* at 35. On July 11, 2018, Petitioner reported pain at a level of 3/10, ranging from 0-8 on a scale of 0-10. *Id.* at 30.

By her August 2, 2018 orthopedic consultation, Petitioner's condition was much improved, and she now reported a pain level of 2 on a scale of 0-10. Ex. 7 at 6. The final medical record relating to her shoulder is from a February 6, 2019 orthopedic visit, at which she reported a pain level of 0/10. *Id.* at 10. The orthopedist noted that she was "doing very well with near-full motion and no complaints now." *Id.* at 11. He added that she may have residual motion issues but that they did "not appear to be limiting at this time." *Id.*

Petitioner filed two affidavits, Exhibits 6 and 10. Petitioner has averred that she experienced pain in her left shoulder immediately after vaccination. Ex. 6 at 1. She reported that the pain worsened with time, and by the time she saw her primary care physician she was in severe pain and could barely move her arm. *Id.* She averred that her injury had caused many sleepless nights and prevented her from participating in activities she had anticipated doing in retirement such as canoeing, kayaking, and swimming. Ex. 10 at 1-2. She reported residual pain at a level of 1-2, which she treated with ibuprofen. *Id.* at 2.

### III.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

## IV. Appropriate Compensation in this SIRVA Case

### A. Pain and Suffering

There is no dispute about Petitioner's awareness of her injury, leaving only severity and duration to be considered. In determining an appropriate award, I have reviewed the complete record in this case, as well as prior awards. My determination is ultimately based on the specific circumstances of this case.

Petitioner requests a pain and suffering award of $80,000.00. Br. at 1. In support of this request, Petitioner cites *Marino*,[4] *Kim*,[5] and *Bordelon*,[6] all of which involved pain and suffering awards of $75,000.00. At argument, Petitioner cited additional cases with awards of $85,000 for past pain and suffering. Tr. at 9-10 (*citing Dhanoa*,[7] *Dirksen*,[8] and *Weber*).[9]

Petitioner also stated that her treatments efforts were ongoing. At hearing, she reported that after she filed her damages brief, she had returned to an orthopedist and undergone steroid injections in both shoulders. Tr. at 5. In addition, Petitioner asserted that she had suffered from overcompensation injuries in the opposite shoulder, and requested that this be given some weight in arriving at a pain and suffering award. *Id.* at 6.

In his damages brief, Respondent declined to propose an amount for a pain and suffering award, instead deferring to the court to award a "reasonable amount for this

---

[4] *Marino v. Sec'y Health & Hum. Servs.*, No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for actual pain and suffering and $88.88 for actual unreimbursable expenses).

[5] *Kim v. Sec'y Health & Hum. Servs.*, No. 17-0418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for actual pain and suffering and $520.00 for actual unreimbursable expenses).

[6] *Bordelon v. Sec'y of Health & Hum. Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019) (awarding $75,000.00 for actual pain and suffering).

[7] *Dhanoa v. Sec'y Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering, $9,900.99 for projected pain and suffering, and $862.15 for actual unreimbursable expenses).

[8] *Dirksen v. Sec'y Health & Hum. Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for actual pain and suffering and $1,784.56 for actual unreimbursable expenses).

[9] *Weber v. Sec'y of Health & Hum. Servs.*, No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) (awarding $85,000.00 for actual pain and suffering and $1,027.83 for actual unreimbursable expenses).

subjective element of damages based on the facts of this case."[10] Opp. at 2. Respondent nevertheless asserted that Petitioner's clinical course was similar to, but arguably less severe than, *Bartholomew*,[11] *Dagen*,[12] and *Knauss*,[13] which involved awards of $67,000, $65,000, and $60,000, respectively. *Id.* at 3. At argument, Respondent noted that in the cases cited in Petitioner's brief, *Marino*, *Kim*, and *Bordelon*, Respondent's proposed award had been in the $45,000-55,000 range, which Respondent asserted would be appropriate in this case as well. Tr. at 18.

At argument, Respondent also pointed out that at Petitioner's December 11, 2017 orthopedist appointment, she was referred to pain management. Tr. at 12-13; Ex. 2 at 67. However, it appeared from the record that she did not act on this referral. *Id.* In addition, Respondent noted that Petitioner was directed to return to the orthopedist in four to six weeks, but did not return for five months. Tr. at 13. Respondent added that at Petitioner's February 28, 2018 PT session, she reported that she had done gardening recently. Tr. at 14; Ex. 9 at 27.

Overall, Respondent agrees that Petitioner initially experienced severe pain, but asserts that the record indicates that her intense pain was of a short duration. Tr. at 15. Respondent adds that Petitioner had a strong recovery by the 4-6 month mark, nearly full recovery at the one year mark, and virtually no complaints by 16 months. Tr. at 15-16.

Concerning Petitioner's assertion that she suffered right shoulder pain due to overcompensation, Respondent asserts that the record does not contain any evidence of right shoulder issues prior to November 19, 2020. Tr. at 16. With respect to the shoulder pain that Petitioner reported in the fall of 2020, Respondent maintained that this shoulder pain was unrelated to Petitioner's SIRVA. *Id.* Respondent added that when Petitioner reported pain in both shoulders at that time, it was in connection with having to use a walker after hip surgery. Tr. at 16, Ex. 11 at 40.

---

[10] In cases such as this, where the dispute centers not on entitlement to pain and suffering damages but to the amount, I will interpret future cases where Respondent declines to propose an amount as reflecting that Respondent cannot articulate preponderant arguments for why Petitioner's position is wrong, and determine a reasonable award based on that fair supposition. Respondent shall propose preferred amounts of damages components if he does not wish me to make such an assumption.

[11] *Bartholomew v. Sec'y of Health & Hum. Servs.*, No. 18-1570V, 2020 WL 3639805 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $67,000.00 for actual pain and suffering).

[12] *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering and $2,080.14 for actual unreimbursable expenses).

[13] *Knauss v. Sec'y Health & Hum. Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for actual pain and suffering and $170.00 for actual unreimbursable expenses).

As I noted at argument, the parties agree that a below-median pain and suffering award is appropriate in this case. Tr. at 21. I have determined that the decision that provides the best guidance is *Kim*. Even though the Petitioner in that case had somewhat fewer PT sessions over a shorter timeframe, the injured party there presented for treatment sooner after vaccination, perhaps suggesting a slightly more severe injury. Both Petitioners were diagnosed with adhesive capsulitis, and neither underwent a cortisone injection or surgical intervention. With *Kim* as guidance, I shall allow a similar sum in actual pain and suffering, and therefore I award Petitioner $**75,000.00** for this damages component.

### B. Unreimbursable Expenses

The parties agree that Petitioner is entitled to $161.35 for past unreimbursable expenses, and I award this amount.

### V.   Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $75,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[14] **I also find that Petitioner is entitled to $161.35 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $75,161.35 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[15]

**IT IS SO ORDERED.**

                         **s/Brian H. Corcoran**
                         Brian H. Corcoran
                         Chief Special Master

---

[14] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.